IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLA B., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 21-cv-4530 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Ella B. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's applications for a period of disability, Disability Insurance Benefits ("DIBs"), and Supplemental Security Income ("SSI"). (Dckt. #13). The Commissioner responds with a motion for summary judgment, (Dckt. #16), seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c) and this Court has jurisdiction pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied, and the Commissioner's motion for summary judgment is granted.

**I.    BACKGROUND**

    **A.    Procedural History**

On September 17, 2018, Claimant (then forty-one years old) filed two disability applications – one for DIBs, one for SSI – alleging disability beginning September 7, 2018, due

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

to Wolff-Parkinson-White syndrome, lumbar fracture, depression, brain tumor, and migraines. (R. 13, 77-78). Her applications were denied initially on February 27, 2019, and upon reconsideration on September 3, 2019. (R. 13, 77-124). Claimant filed a timely request for a hearing, which was held via telephone on December 2, 2020. (R. 35-74). Claimant appeared with counsel and testified at the hearing; a vocational expert ("VE") also testified. (*Id*.). On December 17, 2020, the ALJ issued a written decision denying Claimant's applications for benefits. (R. 13-27). Claimant timely requested review with the Appeals Council, who denied her request on June 21, 2021, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

      **B.**      **The Social Security Administration Standard to Recover Benefits**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If the claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C. The ALJ's decision

The ALJ applied the five-step inquiry as required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 7, 2018, and that Claimant met the insured status requirements of the Act through December 31, 2023. (R. 15). At step two, the ALJ determined that Claimant suffered from severe impairments of: (1) mild degenerative changes in the lumbar spine at L3-S1 with radiculopathy; (2) depression; (3) history of lumbar compression fracture; and (4) Wolff-Parkinson-White syndrome. (R. 16). At step three, the ALJ found that Claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments in the Regulations, including listings 1.04 ("Disorders of the spine") or 12.04 ("Depressive, bipolar, and related disorders"). (R. 17).

Before turning to step four, the ALJ concluded that Claimant had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: never climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. She can never be exposed to concentrated levels of extreme cold, can work in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations, and must be permitted to wear dark glasses when working outdoors in bright sunlight or under fluorescent lighting. She can perform simple, routine, and repetitive tasks, but not at a production rate pace (so, for example, no assembly line work), and will require regularly scheduled breaks of five minutes every two hours during an eight-hour workday.

(R. 19). At step four, the ALJ concluded that Claimant could not perform her past work as a home attendant. (R. 25). Finally, at step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Claimant could perform, including roles as a marker (55,000 nationally-available jobs); routing clerk (67,000 jobs); and garment sorter (25,000 jobs). (R. 25-26). Thus, the ALJ found Claimant was not under a disability from September 7, 2018, through the date of the decision, December 17, 2020. (R. 27).

4

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

5

### III. ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's decision to deny her benefits, arguing that: (1) the ALJ erred in rejecting the opinions of treating physician, Dr. Danuta Kowalski; (2) the ALJ improperly discredited her subjective statements regarding her limitations; and (3) the ALJ's formulation of the RFC is beset with logical errors and warrants remand.[2] For the reasons that follow, the Court disagrees on each point.

#### A. The ALJ's assessment of the medical opinions of Dr. Kowalski is supported by substantial evidence.

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a); *see also Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D.Ill. Mar. 28, 2023). Instead, ALJs will consider the persuasiveness of such opinions based on their "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D.Ill. Mar. 29, 2023) (citing 20 C.F.R. §404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.'" *Bethany G.*, 2023 WL 2683501, at *3, *quoting Ray v. Saul*, 861 Fed.Appx. 102, 105 (7th Cir. 2021) (citations omitted); 20 C.F.R. §404.1520c(b)(2).

---

[2] Claimant raised a fourth argument alleging that the ALJ's decision was constitutionally defective, (Dckt. #13 at 14). However, as Claimant withdrew this argument in her Reply, (Dckt. #20 at 11 n.4), the Court need not address the substance of the argument in this Opinion.

Here, Dr. Kowalski issued a 2018 letter (dated September 25) in which she opined that Claimant was "unable to work until further notice" and also issued three opinions assessing Claimant's RFC (dated March 11, 2020, October 21, 2020, and October 27, 2020) during a seven-month period in 2020. (*See* R. 333, 858-60, 861-63, 918-20).

The ALJ gave no weight to Dr. Kowalski's 2018 opinion that Claimant was "unable to work" because "it concern[ed] issues that are reserved to the Commissioner" and is therefore "neither valuable nor persuasive." (R. 24). The ALJ's decision was clearly correct because, as the Seventh Circuit has often reiterated, opinions such as this one are "entitled to *no* weight, even coming from a treating physician." *Spies v. Colvin*, 641 Fed.Appx. 628, 636 (7th Cir. 2016) (emphasis added); *Ray v. Saul*, 861 Fed.Appx. 102, 105-06 (7th Cir. 2021); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).

The ALJ further found that Dr. Kowalski's 2020 opinions are "not persuasive" because "they are inconsistent with each other and not supported by the medical evidence in the file." (R. 23). In particular:

> In two of the opinions, Dr. Kowalski opined that the claimant had limitations using her hands for reaching, handling, or fingering, however in h[er] most recent opinion, Dr. Kowalski opined that she did not have any limitations reaching, handling, or fingering. . . . Furthermore, treatment records typically showed normal muscle sensation. . . . Additionally, Dr. Kowalski's opinions regarding the need to elevate her legs are not supported by the evidence in the file. In September 2018, Dr. Kowalski's physical exam noted that edema was not present in her lower extremities. . . . This detracts from the persuasiveness of h[er] opinions. Moreover, h[er] opinions that the claimant could not lift any weight or that she required the use of a cane . . . are not supported by the evidence in the file. Diagnostic testing noted mild degenerative changes. . . . Additionally, treatment records typically demonstrated normal muscle strength, or only slightly decreased muscle strength, generally found no neurological deficits. . . . This diminishes the persuasiveness of his opinions.

(R. 23 (citations to the record omitted)). The internal inconsistencies between Dr. Kowalski's opinions themselves, as well as their discrepancies with the medical record, constitute legitimate

reasons for the ALJ to discount the opinions. 20 C.F.R. §404.1520c(a), (c); *see, e.g.*, *Baptist v. Kijakazi*, ___ F.4th ___, 2023 WL 4540546, at *5-6 (7th Cir. July 14, 2023) (a treating physician's opinion may be discounted where, *inter alia*, it is internally inconsistent or is inconsistent with other objective evidence in the record, such as physician treatment notes).

Claimant does not dispute that Dr. Kowalski's opinions are riddled with internal inconsistencies. Instead, she asserts that the ALJ erred by not attaching more significance to certain portions of Dr. Kowalski's opinions that were consistent than attached to the portions that are internally inconsistent because the consistent portions are, in her view, more important. (Dckt. #13 at 14). This, however, is nothing more than an invitation for this Court to do what it cannot do, which is to re-weigh the evidence. *McKinzey*, 641 F.3d at 889; *Elder*, 529 F.3d 413. In any event, the Court would not come to a different conclusion than the ALJ reached even if it were at liberty to do so. The striking and inexplicable differences between Dr. Kowalski's second and third opinions (which were rendered only *six* days apart) with respect to: (1) Claimant's ability to pay attention; (2) her ability to perform low-stress jobs; (3) the distance she can walk; (4) how frequently she needs to walk around during the course of a day; (5) her ability to stoop and climb stairs; (6) whether or not she needs to elevate her legs; (7) how much weight she is able to lift; and (8) her ability to reach, grasp, turn, twist objects, and perform fine manipulations (R. 23), evidence a high level of inconsistency and a correspondingly low level of supportability.

Furthermore, Dr. Kowalski's opinions were inconsistent with the opinions of the state agency consultants (Drs. Deborah Albright and Ranga Reddy) at the initial and reconsideration levels, which the ALJ found to be "somewhat persuasive." (R. 24). Among other things, both state agency physicians had the opportunity to review x-ray and MRI imaging of Claimant's

8

back from September and October 2018 and noted that: (1) the x-ray of Claimant's lower back "revealed satisfactory lumbar vertebral bodies" with no acute fracture and was accompanied by "[m]ild degenerative changes with anterior osteophyte formation most prominent at the L3-L4 level;" (2) the MRI of Claimant's spine "was unremarkable for herniated disc, fracture or spinal canal/foraminal compromise;" and (3) Claimant ambulated without difficulty as of the time of their review.[3] (R. 95-96, 107-109, 119-20). Thus, the consultants' opinions aligned with the ALJ's finding that Dr. Kowalski's opinions are "not supported by the medical evidence in the file," (R. 23), and, as such, they provide further support for the ALJ's decision to discount her opinions. *See, e.g.*, *Baptist*, 2023 WL 4540546, at *5 (7th Cir. July 14, 2023) (a treating physician's opinion may be discounted where it is inconsistent with a consulting physician's opinion); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (same).

For these reasons, the ALJ's decision to find Dr. Kowalski's opinions non-persuasive is supported by substantial evidence.

### B. The ALJ's Assessment of Claimant's subjective statements regarding her symptoms is supported by substantial evidence.

Claimant argues that the ALJ's discounting of her subjective back pain and migraine symptoms warrants reversal because they "were not supported in the evidence or testimony." (Dckt. #13 at 11). Again, the Court disagrees.

Any challenge to the ALJ's symptom evaluation faces a high bar, and the Court "will not overturn the ALJ's credibility finding unless it is 'patently wrong.'" *Lisa C. v. Kijakazi*, No. 20-cv-5173, 2023 WL 3436400, at *11 (N.D.Ill. May 12, 2023), *quoting Elder*, 529 F.3d at 413-14.

---

[3] The ALJ appropriately discounted the agency consultants' opinions (which were issued on January 21, 2019 and August 30, 2019) to some degree because additional medical evidence submitted after their reviews supported greater limitations in Claimant's ability to perform work-related activities. (R. 24; R. 89-100, 101-12).

To show that the ALJ's evaluation is patently wrong, a claimant must demonstrate that the evaluation lacks "any explanation or support." *Elder*, 529 F.3d at 413-14; *Horr v. Berryhill*, 743 Fed.Appx. 16, 20 (7th Cir. 2018). SSR 16-3p provides guidance to ALJs for assessing a claimant's symptoms via a two-step process whereby the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p, 2017 WL 5180304, at *3; *Wilder*, 22 F.4th at 654. In making this evaluation, the ALJ should consider the entire case record, along with (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and side effects of medication; (5) treatment other than medication; (6) any measures other than treatment an individual uses to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7; 20 C.F.R. §416.929.

Here, the ALJ detailed Claimant's historic subjective reporting and hearing testimony regarding her symptoms, (R. 19-23), considered the factors specified by SSR 16-3p, and found that Claimant's "medically determined impairments could reasonably be expected to cause some of her alleged symptoms." (R. 21). However, the ALJ further found, based on her review of the record, that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

In support of this conclusion, the ALJ found that: (1) Claimant's lumbar spine x-rays and a lumbar spine MRI revealed only mild degenerative changes to her spine; (2) her treatment records typically demonstrated normal (5/5), or only slightly decreased (4/5), muscle strength; (3) her records generally found no neurological deficits; (4) she did not – contrary to her testimony – require a walker per Dr. Kowalski's October 2020 records; (5) her treatment records generally noted that she had a normal gait, although at times it was slightly antalgic;[4] (5) she never presented to an emergency room for her migraines; (6) her migraines were treated with medication and her physical examinations generally noted that her head was "normocephalic and atraumatic;" (7) she participated in recommended physical therapy for a brief time and, at times, followed up with her treaters more slowly than they recommended; and (8) she received some relief from prescribed medication and injections she received for her pain. (R. 16, 19-22 (citing Claimant's medical records)). The ALJ's reliance on this evidence to discount Claimant's subjective statements is supported by regulations and precedent. *See* 20 C.F.R. §404.1529(c)(3); SSR 16-3p, 2017 WL 518004, at *7; *Prill v. Kijakazi*, 23 F.4th 738, 738 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Despite noting that "the ALJ gave several reasons for discounting [her] symptoms" by "focus[ing] solely on the objective evidence," Claimant asserts that the ALJ should have focused more on her pain symptoms in her analysis. (Dckt. #13 at 11-12). However, the ALJ described Claimant's subjective statements concerning her pain and, as the preceding paragraph lays out, considered the relevant factors when assessing Claimant's subjective statements. *See, e.g.*, *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. §404.1529(c)(3) and listing

---

[4] For example, the ALJ noted that in October 2018, about one month after her accident, Claimant told her physical therapist that, despite rating her back pain a ten out of ten, she did not need a walker to walk, did not require assistance doing daily activities, and was not afraid of falling. (R. 21 (citing R. 488)).

11

factors). The ALJ may consider whether a claimant's subjective complaints of pain are fully supported by the medical record and "[t]he discrepancy between the degree of pain attested to by the [claimant] and that suggested by the medical evidence is probative that the [claimant] may be exaggerating her condition." *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000). Here, the ALJ expressly noted that the findings from Claimant's lumbar spine x-rays and MRI were "*not consistent with her allegations of disabling impairments*," (R. 21), and that Claimant's statements of disabling pain from her migraines were likewise "not entirely consistent with the medical records in the file." (R. 16). This is sufficient.

In any event, even if the ALJ's analysis of Claimant's pain symptoms was somehow flawed, the ALJ's decision to discount Claimant's subjective statements based on their conflict with the objective medical evidence was not patently wrong. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Accordingly, there is no basis for remand even if the ALJ's "reasoning was not airtight." *Matthews v. Saul*, 833 Fed.Appx. 432, 437 (7th Cir. 2020); *Schrank v. Saul*, 843 Fed.Appx. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony . . . was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.").

### C. The RFC is supported by substantial evidence.

Claimant argues that the ALJ's finding "runs counter to SSR 96-8p" because the ALJ "failed to explain how the evidence aligned with her conclusion that [Claimant's] back pain, radicular pain or headache pain would be accommodated by a light RFC." (Dckt. #13 at 10);

12

(Dckt. #20 at 1). The Court disagrees and finds that the ALJ's formulation of Claimant's RFC is supported by substantial evidence.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759, F3d 811, 817 (7th Cir. 2014); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (The RFC "is the most an individual can work despite his or her limitations or restrictions."). The task of determining the RFC is reserved for the Commissioner, *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995), and "the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment" when making this determination. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). In particular:

> The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. The regulation also requires an ALJ to describe 'how the evidence supports each conclusion [about a strength function], citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'

*Jarnutowski*, 48 F.4th at 774, *quoting* SSR 96-8p, 1996 WL 362207, at *34478. An ALJ is entitled to reject medical opinion evidence and her "RFC assessment is not required to match the opinion of at least one physician of record," *Andrea H. v. Kijakazi*, No. 20 CV 1828, 2023 WL 2403138, at *4 (N.D.Ill. Mar. 8, 2023), so long as she builds an accurate and logical bridge from the record to her conclusion by specifying the evidence that supports her formulation of the RFC. *See, e.g.*, *Jarnutowski*, 48 F.4th at 774 (an ALJ's RFC assessment may be affirmed even if it "does not conform with SSR 96-8p's requirements if [the court is] satisfied that the ALJ buil[t]

13

an accurate and logical bridge from the evidence to her conclusion.") (internal quotation marks omitted); *Bailey v. Barnhart*, 473 F.Supp.2d 842, 850 (N.D.Ill. 2006) ("it [is] the ALJ's duty to: (1) develop the record to a sufficient degree to enable her to construct a reasonable RFC based on objective evidence; and (2) articulate clearly how and why that finding was reached.").

Here, Claimant alleges that none of the record evidence or testimony "support a sedentary RFC"[5] and that the ALJ thus impermissibly "relied upon her own lay interpretation of the evidence." (Dckt. #13 at 8-9). This is incorrect. In making the RFC finding, the ALJ outlined Claimant's medical history, imaging, and opinion evidence related to her severe and non-severe impairments, and designed limitations to account for them. As such, the ALJ adequately articulated her rationale for finding Claimant had the RFC for light work with the stated exertional and non-exertional limitations. (R. 19).

In particular, with respect to Claimant's migraines, the ALJ discussed the evidence pertaining to this impairment and expressly accommodated Claimant's condition, (R. 16), by providing that "[s]he can never be exposed to concentrated levels of extreme cold, can work in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations, and must be permitted to wear glasses when working outdoors in bright sunlight or under florescent lighting." (R. 19). These limitations properly accommodated Claimant's migraines by avoiding the triggers that Claimant testified to at the hearing. (R. 16, 49-50); *see also Olga M. v. Comm'r of Soc. Sec.*, No. 1:22-CV-03217-GRJ, 2023 WL 4558509, at *7 (S.D.N.Y. July 17, 2023) (finding that the ALJ properly assessed and accounted for

---

[5] Although Claimant asserts that the ALJ found that she had the RFC to perform sedentary work, (*see* Dckt. #13 at 8, 10), the ALJ actually assessed an RFC for *light* work with restrictions. (R. 19).

14

claimant's migraines by designing an RFC that avoided her triggers (namely, extreme cold and noise above a moderate level)).

Notwithstanding the inclusion of these limitations, Claimant asserts that the ALJ erred by failing to credit her testimony that her migraines created the need for her to lay down for two hours a day three to four times a week. (R. 50-51). However, the ALJ found that Claimant's testimony regarding the severity of her migraines was "not entirely consistent with the medical records in the file." (R. 16). In particular, the ALJ relied upon: (1) physical examinations which generally noted that her head was "normocephalic and atraumatic" (R. 16 (citing R. 770, 785, 805, 104)); (2) evidence that Claimant was treated with medication (namely, Topamax), which Claimant testified "somewhat . . . helps" with her migraines (R. 16 (citing R. 975); R. 50); and (3) evidence that Claimant did not seek treatment at the emergency room for her migraines (R. 16). The ALJ also noted that Claimant had no neurologic deficits. (R. 21). The ALJ's decision to discount this portion of Claimant's testimony is further supported by the opinions of the state agency consultants, who opined that Claimant's migraines were "non-severe" and whose opinions the ALJ found to be "somewhat persuasive." (R. 24; R. 93, 105).

Such factors can be considered when determining whether ALJs have properly considered and discounted claimants' testimony regarding the severity of their migraine headaches. *See, e.g., Green v. Colvin*, 605 Fed.Appx. 553, 557-58 (7th Cir. 2015) (affirming the ALJ's decision to reject claimant's testimony regarding the asserted limitations created by her migraines where claimant was prescribed Topamax, the neurological examination did not reveal any substantial abnormalities, and the ALJ also relied on two state medical consultants who both found insufficient evidence of disabling impairments); *Angela J.B. v. Kijakazi*, No. 121CV02801SEBTAB, 2023 WL 2445442, at *3 (S.D.Ind. Mar. 9, 2023) (finding that "[d]espite

15

[claimant's] subjective complaints about her headaches, the ALJ reasonably concluded that [claimant's] headaches were not disabling based on her daily activities, normal examination findings, normal head scans, and degree of improvement with medication" and further finding that "the ALJ is permitted to consider aggressive treatments like surgery or emergency care as well as other treatments an individual has received for relief of pain and other symptoms."); *McCray v. Saul*, No. 4:20-CV-3-DAS, 2021 WL 933859, at *3 (N.D.Miss. Mar. 11, 2021), *aff'd sub nom. McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544 (5th Cir. Feb. 1, 2022) (finding that the ALJ did not err in his assessment of claimant's headaches where medication alleviated her headaches at times and physical examinations of the claimant were normal showing, among other things, that claimant had a "normocephalic and atraumatic head"); *see also Connour v. Barnhart*, 42 Fed.Appx. 823, 830 (7th Cir. 2002) (holding that the ALJ appropriately considered the fact that claimant had never sought emergency room treatment when finding that the evidence undermined claimant's credibility).[6]

Next, the ALJ discussed the objective medical evidence concerning Claimant's issues with her lumbar spine and slightly decreased muscle strength and accommodated these impairments by limiting her to work at the light exertional level, with no climbing of ladders, ropes, scaffolds, and frequent stooping, kneeling, crouching, and crawling. (R. 21-22).[7] Finally,

---

[6] The decision in *Hodges v. Saul*, No. 18-CV-1547, 2019 WL 5092909 (E.D.Wis. Oct. 11, 2019), upon which Claimant relies, is factually distinguishable. In that case, the medical records showed that claimant experienced severe headaches with throbbing and stabbing pain two to six days per week for at least seven years and that her headaches were sometimes accompanied by nausea and vomiting. *Id.*, at *2. The *only* specific reason that the ALJ gave for finding that claimant's headaches were not disabling is that she did not seek emergency treatment for headache relief. *Id.* The court found that this reason, standing alone, was insufficient and it remanded for reassessment of claimant's complaints of headaches. *Id.*

[7] Claimant contends that the ALJ erred by interpreting her x-rays and MRI as a layperson without the assistance of a medical professional. (Dckt. #20 at 4-5). However, the ALJ cited to reports from physicians who interpreted Claimant's lumbar spine MRI and x-rays to support her finding that these tests showed only "mild" degenerative changes. (*See* R. 21 (citing to R. 557 (report from Richard Kane, M.D.) and R. 911 (report from radiologist Parinda Shah)).

the ALJ discussed the evidence pertaining to Claimant's mental impairments and accommodated them by limiting her to simple, routine, and repetitive tasks. (R. 22).

In sum: the ALJ's findings comply with SSR 96-8p and are supported by substantial evidence. *See Jarnutowski*, 48 F.4th at 774, *quoting* SSR 96-8p, 1996 WL 362207, at *34478; 20 C.F.R. §404.1545(a)(1).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #13), is denied and the Commissioner's motion for summary judgment, (Dckt. #16), is granted. The Decision of the Commissioner is affirmed.

**Date: August 4, 2023**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**